UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Angela Wess, *et al.*,**

    **Plaintiffs,**

**-v-**
                                                                     Case No. 2:08-cv-00623
                                                                     Judge Michael H. Watson

**Robert M. Storey, *Esq.*, *et al.*,**

    **Defendants.**

## OPINION AND ORDER

Plaintiffs in this putative class action assert claims under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01 *et seq.* In essence, plaintiffs contend that defendants violated the Acts by instituting state court collection actions outside the applicable statute of limitations against plaintiffs and other similarly situated individuals. This matter is before the Court on defendant Central Ohio Credit Corporation's ("COCC") motion to dismiss on the grounds that plaintiffs have failed to state a claim upon which relief can be granted.[1]  (Doc. 8). For the reasons that follow the Court grants COCC's motion to dismiss.

---

[1] Plaintiffs assert only an OCSPA claim against defendant COCC.

## I. Facts

The Court accepts as true the well-pleaded facts set forth in the complaint.

Plaintiff Angela Wess resides in Franklin County, Ohio. On October 10, 1998, Wess entered a retail installment sales contract with P.A. Days, Inc. ("P.A. Days") for the purchase of a 1989 Oldsmobile Cutlass. She purchased the car for personal, family, and household transportation.

Plaintiff Michelle Caldwell also resides in Franklin County, Ohio. On September 16, 1999, Caldwell entered a retail installment sales contract with P.A. Days for the purchase of a 1990 Pontiac Sunbird. She likewise purchased the car for personal, family, and household transportation.

Defendant COCC is a registered fictitious name of Ricart Financial Services, Inc., an Ohio Corporation. COCC is affiliated with the central Ohio Ricart car dealerships and P.A. Days. The complaint avers that P.A. Days is now "defunct." COCC was the assignee of all or most of the retail installment contracts P.A. Days entered into with individuals for the purchase of cars. The retail installment contracts plaintiffs entered into with P.A. Days were assigned to COCC soon after they were signed.

Defendant Robert M. Storey is an attorney who collects consumer debts.

On September 13, 2007, Storey, acting on behalf of COCC, filed a civil action in state court against Wess, falsely alleging that Wess owed COCC $3,936. Records filed in the state court action indicated that Wess had defaulted on the agreement sometime before April 1999. Wess' attorney moved to dismiss, arguing the action was filed beyond the four-year statute of limitations for the sale of goods, Ohio Rev. Code §

1302.98. Defendants did not oppose the motion, nor did they voluntarily dismiss the action. On January 16, 2008, the state court dismissed the action as time-barred. COCC did not appeal the decision.

On October 13, 2007, Storey, acting on behalf of COCC, filed a civil action in state court against Caldwell, falsely alleging that Caldwell owed COCC $4,284.92. Records filed in the state court action indicated that Caldwell had defaulted on the agreement sometime before March 2001. Caldwell's attorney moved to dismiss, arguing the action was filed beyond the four-year statute of limitations for the sale of goods, Ohio Rev. Code § 1302.98. Defendants did not oppose the motion, but voluntarily dismissed the action without prejudice.

Plaintiffs aver that defendants filed more than fifty similarly time-barred lawsuits in state court *after* the state court dismissed the action against Wess as untimely.

Plaintiffs assert a claim against Storey under the FDCPA, alleging he engaged in deceptive and unfair collection practices. Plaintiffs also assert a claim under the OCSPA against both Storey and COCC, arguing both defendants committed unfair, deceptive, or unconscionable acts.

## II. Motion to Dismiss

The Supreme Court has explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).

Recently, the Supreme Court clarified the standard applicable to a motion to

dismiss, identifying a two-pronged approach. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). First, the court must look at the pleadings to separate factual assertions from mere legal conclusions because "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Second, the court must determine whether the factual allegations state a plausible ground for relief, meaning the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). The Court further noted that determining plausibility will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In order to cross the line between possible and plausible grounds for relief, a plaintiff must plead facts that are more than "'merely consistent with a defendant's liability." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 557).

### III. Discussion

COCC advances three grounds for dismissal. First, COCC contends that it did not engage in a consumer transaction for purposes of establishing liability under the OCSPA because it is not a "supplier" and because it is exempt as a "dealer in intangibles." Second, COCC maintains the collection lawsuits were timely filed within the fifteen-year limitation period established under Ohio Rev. Code § 2305.06. Third, COCC argues that the doctrine of *res judicata*, otherwise known as claim preclusion, bars Wess' OCSPA claim because Wess could have raised it as a counterclaim in the prior collection action. For the reasons stated below, the Court finds that COCC is not a supplier within the meaning of the OCSPA, making it unnecessary to address COCC's

remaining grounds for dismissal.

At its core, the OCSPA prohibits suppliers from committing unfair, deceptive, or unconscionable acts in connection with consumer transactions. Ohio Rev. Code §§ 1345.02, 1345.03.[2] The Act defines "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer." Ohio Rev. Code § 1345.01(C). A "consumer transaction" is "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitations to supply any of these things." Ohio Rev. Code § 1345.01(A).

COCC asserts it cannot be held liable under the OCSPA because, as a mere assignee, it is not a supplier within the meaning of the Act. COCC cites several decisions in support of this argument. *Jenkins v. Hyundai Motor Financing Co.*, 389 F. Supp. 2d 961, 969-71 (S.D. Ohio 2005); *Martin v. General Motors Acceptance Corp.*, 160 Ohio App. 3d 19, 28 (2005); *Dartmouth Plan, Inc. v. Haerr*, No. 8-89-25, 1990 WL 197844, at *2 (Ohio Ct. App. Dec. 4, 1990).

As in the instant case, the plaintiff in *Jenkins* entered into a retail installment contract to purchase a car from an automobile dealer. The dealer in *Jenkins* later assigned the contract to the defendant. The plaintiff became disabled, and eventually defaulted. The defendant repossessed and sold the car, resulting in a deficiency

---

[2] "No *supplier* shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02 (emphasis added). "No *supplier* shall commit an unconscionable act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.03 (emphasis added).

balance of $14,000. The plaintiff then brought a putative class action under the Ohio Retail Installment Sales Act ("RISA"), the OCSPA, and Ohio's Uniform Commercial Code. The plaintiff asserted that the defendant violated the OCSPA by failing to send the required notice prior to auctioning the car, as well as through its attempts to collect the deficiency. The defendant sought dismissal of the OCSPA claim on the ground that, as an assignee of the retail installment contract, it was not a supplier within the meaning of the OCSPA.

> The Court in *Jenkins* agreed with the defendant, stating:
>
> "[A] mere assignee of the installment obligation is not a supplier within the meaning of R.C. 1345.01(C)." *Dartmouth Plan, Inc. v. Haerr,* 1990 WL 197884 (Ohio App. 3d Dist. Dec. 4, 1990); *see also Hardeman v. Wheels, Inc.,* 56 Ohio App.3d 142, 565 N.E.2d 849 (1988). Accordingly, an assignee of the contract who provided financing for the supplier is not subject to CSPA, and in particular, Ohio Rev. Code § 1345.03.
>
> *Martin v. General Motors Acceptance Corp.,* 160 Ohio App.3d 19, 825 N.E.2d 1138 (2005), is instructive. The court determined that GMAC, as the secured lender, was not a "supplier" under CSPA. According to the court, CSPA "does not apply to GMAC ... R.C. 1345.03 applies to 'consumers' and 'suppliers' who enter into 'consumer transactions.' GMAC is not a 'supplier' because it is not the seller. [The auto dealer] is the seller." *Martin,* 160 Ohio App.3d at 28, 825 N.E.2d at 1147. In this case, HMFC is similarly not a supplier.

389 F. Supp. 2d at 970.

Plaintiffs criticize the *Dartmouth Plan* decision, arguing that the court in that case failed to apply well-established rules of statutory construction. They also question this Court's decision in *Jenkins* because it relied on *Dartmouth Plan*.

The court in *Dartmouth Plan* held that the assignee of a retail installment contract was not a supplier for purposes of liability under the OCSPA. No. 8-89-25, 1990 WL 197884, at *2. The court in *Dartmouth Plan* observed:

> Moreover, "supplier" is defined by R.C. 1345.01 as:
>
> "(C) 'Supplier' means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer."
>
> We agree with the trial court that Dartmouth, a mere assignee of the installment obligation, is not a supplier within the meaning of R.C. 1345.01(C).
>
> R.C. 1345.01(C) defines a supplier as an assignor not an assignee although Ohio courts have found assignees to be suppliers in certain circumstances. Generally, those circumstances are ones where the assignee is in the business of attempting to enforce payment of the debt for a supplier, i.e. a collection agency. The courts deem such assignments as part of and effecting the consumer transaction. See *Celebrezze v. United Research* (1985), 19 Ohio App.3d 49, 51. *Liggins v. The May Company* (1975), 73 O.O.2d 306, 308.
>
> Although Dartmouth's extension of credit did effect the transaction between Krystal Klear and Haerr, it's connection to this transaction is too attenuated to fall within the scope of the statutory definition of a supplier. Further, the contract obligation was not assigned to Dartmouth for enforcement, but as a purchase of a security by it in its general business practice. Therefore, Dartmouth cannot even be deemed to fall within the expanded definition of a supplier.

*Id.*

Plaintiffs argue that the analysis in *Dartmouth Plan* is perfunctory, and is otherwise flawed because the court failed to consider the phrase "or other person engaged in the business of effecting or soliciting consumer transactions." Ohio Rev. Code § 1345.01(C). The Court disagrees. The *Dartmouth Plan* court quoted the full definition of the term "supplier" and was therefore well aware that the definition went beyond the examples it listed. Indeed, the court in *Dartmouth Plan* expressly acknowledged that an assignee may be a supplier if it acts as a collection agent for a supplier. It nonetheless concluded that a "mere" assignee's connection with the

underlying transaction was insufficient to bring it within the expanded definition of supplier. The Court cannot say that the reasoning of *Dartmouth Plan* is unsound, or that this Court erred in relying on it in *Jenkins*.

Plaintiffs next argue that COCC was engaged "in the business of effecting and soliciting consumer transactions." Ohio Rev. Code § 1345.01(C). Plaintiffs assert that COCC fits within this definition because it collected and enforced consumer payments. In support of this proposition, plaintiffs cite *Celebrezze v. United Research, Inc.*, 19 Ohio App. 3d 49, 51 (1985) and *Liggins v. May Co.*, 53 Ohio Misc. 21 (1975). Notably, the court in *Dartmouth Plan* distinguished these two decisions on the ground that they involved entities that were acting as collection agencies for the suppliers. *Dartmouth Plan*, No. 8-89-25, 1990 WL 197884, at *2. Moreover, the Court in *Jenkins* rejected the same argument:

> Alternatively, Jenkins contends that HMFC is a supplier, and hence subject to CSPA, as a result of its engaging in the business of enforcing or attempting to enforce the collection of a debt in a consumer transaction. In effect, Jenkins contends the HMFC is a collection agency. Jenkins cites *Liggins v. May Co.*, 53 Ohio Misc. 21, 373 N.E.2d 404 (1977), for the proposition that "[a] person who engages in the business of enforcing or attempting to enforce such claim is a 'supplier' as defined at R.C. 1345.01(C)." *Id.* at 405-06.
>
> In *Liggins,* the court of common pleas found that CSPA applied to claims against Professional Services Unlimited, Inc., a "collection agency [that] sent the plaintiff two debt collection or 'dunning' notices on behalf of the May Company...." *Id.* at 405. *Liggins* is distinguishable from the case at bar because HMFC is not a collection agency and was not hired to collect debts on behalf of Dennis Autopoint. HMFC was attempting to collect its own debt, not the debt of the supplier, Dennis Autopoint. As discussed by the court of appeals in *Dartmouth Plan,* "the contract obligation was not assigned to Dartmouth for enforcement, but as a purchase of a security by it in its general business practice." 1990 WL 197884 at *2. Similarly,

> HMFC was not hired to enforce or collect the debts but received the rights under the Contract by assignment.

389 F. Supp. 2d at 970-71. The Court's reasoning in *Jenkins* is fully applicable to the instant case. Here, the complaint alleges that P.A. Days assigned the retail installment contracts to COCC. Nothing in the complaint suggests that as an assignee, COCC was acting as a collection agency for P.A. Days. Under *Jenkins*, COCC is not a supplier within the meaning of the OCSPA, and COCC is entitled to dismissal of plaintiffs' claim against it.

Lastly, plaintiffs attempt to avoid the conclusion that COCC is not a supplier by arguing that COCC may be held liable as if it were a supplier because, as an assignee, it stepped into the shoes of P.A. Days. Plaintiffs, however, fail to cite any relevant authority in support of their argument. Accordingly, the Court declines to adopt plaintiffs' "steps into the shoes" theory.

## IV. Disposition

Based on the above, the Court **GRANTS** COCC's motion to dismiss (Doc. 8). The Court therefore **DISMISSES** plaintiffs' OCSPA claim against COCC, and, as a result, **DISMISSES** COCC from this lawsuit.

The Court will issue a separate opinion on defendant Storey's motion for partial judgment on the pleadings. (Doc. 10).

The Clerk shall remove Doc. 8 from the Court's CJRA motions report.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**