UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANGELA WESS, et al.,

    Plaintiffs,

    -v-                         CASE NO. 2:08–cv–623

ROBERT M. STOREY, ESQ., et al.,      JUDGE MICHAEL H. WATSON

    Defendants.


## OPINION AND ORDER APPROVING CLASS SETTLEMENT, CERTIFYING CLASS, AND AWARDING ATTORNEYS' FEES AND COSTS, AND INCENTIVE PAYMENTS TO CLASS REPRESENTATIVES

Plaintiffs bring this class action lawsuit under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 et seq., seeking actual and statutory damages and declaratory and injunctive relief against the assignee of retail installment sales contracts from an affiliated, defunct "buy here, pay here" auto dealer and the assignee's collection counsel. The claims allege a pattern and practice by Defendants of pursuing collection and collection litigation under these sales contracts against the dealer's former customers after expiration of the four-year statute of limitations applicable to such contracts. The parties reached a Settlement Agreement and Stipulation of Settlement on March 8, 2010. This matter is now before the Court on the Joint Motion for Final Approval of Proposed Settlement, the Agreed Motion for Award of Fees and Costs, Final Certification of the Class, and Dismissal of the Claims against Defendant.

## I. APPROVAL OF PROPOSED CLASS SETTLEMENT

This Court recognizes that settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Nonetheless, "[c]lass actions are unique creatures with enormous potential for good and evil." *Johnson v. General Motors Corp.*, 598 F.2d 432, 439 (6th Cir. 1979) (Fay, J., concurring). One such evil the court must guard against is a collusive tradeoff of a large award of attorneys' fees for class counsel in return for a small settlement for the class and a release of claims. *See, e.g., Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 578–80 (E.D. Pa. 2001); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 118–19 (S.D.N.Y. 1999). In recognition of that, Fed. R. Civ. P. 23(e) provides important protections for class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983). To this end, Rule 23(e) requires three steps for the approval of a proposed class action settlement:

1.    The Court must preliminarily approve the proposed settlement;

2.    Members of the class must be given notice of the proposed settlement; and

3.    A fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable and adequate.

Fed. R. Civ. P. 23(e); *Williams v. Vukovich*, 720 F.2d 909, 920–21 (6th Cir. 1983); *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 71 (S.D. Ohio 1984). In the instant case, the first two steps have been satisfied. The Court has preliminarily approved the Proposed Settlement. In addition, the class was given notice of the Proposed Settlement, and the

Court finds that the notice was the best notice practicable under the circumstances. In addition, the Court conducted a fairness hearing on October 5, 2010. Thus, it only remains for this Court to decide whether the Settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C).

The determination of whether a proposed class settlement is fair, reasonable, and adequate requires the Court to consider and balance several factors, which include:

1. Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

2. The complexity, expense, and likely duration of the litigation;

3. The stage of the proceedings and the amount of the discovery completed;

4. The judgment of experienced trial counsel;

5. The nature of the negotiations;

6. The objections raised by the class members; and

7. The public interest.

*In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 245 (S.D. Ohio 1991); *Bronson*, 604 F. Supp. at 74-82. In the end, the Court's determinations are no more than "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (quoting *City of Detroit v. Grinnell*, 495 F.2d 448, 468 (2d Cir. 1974)).

## A. Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement.

### 1. *The likelihood of ultimate success on the merits*

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Defendant Storey filed a Motion for Judgment on the Pleadings and a Motion for Partial Summary Judgment, arguing that an attorney-debt collector is not liable under the Ohio Consumer Sales Practices Act under these circumstances. The Court denied the motions finding that as the underlying debt constituted a consumer transaction, the attorney-debt collector is subject to the Ohio Consumer Sales Practices Act. Additionally, the Franklin County Common Pleas Court dismissed Defendants' lawsuits against the Plaintiffs for filing a debt collection lawsuit outside of the statute of limitations. Several district courts agree that filing a debt collection lawsuit outside of the statute of limitations is a violation of the Fair Debt Collection Practices Act and the Ohio Consumer Sales Practices Act. However, issues remain as to the appropriate statute of limitations to be applied and whether, in this instance, the Fair Debt Collection Practices Act and the Ohio Consumer Sales Practices Act was violated.

For example, Defendant Storey maintains that even if the limitations period expired, there could be no violation of the FDCPA or OCSPA because Defendant did not knowingly file an action barred by the applicable statute of limitations. This Court has adopted the "knowing" standard in another case. This Court held that "a threat to sue a consumer on a debt that is known to be time barred is a deceptive collection

practice under the FDCPA." *Canterbury v. Columbia Gas of Ohio*, 2001 WL 1681132, at *6 (S.D. Ohio Sept. 25, 2001).

> With respect to 15 U.S.C. § 1692e, the Court accepts, for present purposes, the Plaintiff's underlying proposition that a debt collector violates the statutory provision, by knowingly attempting to collect a debt that is barred by the statute of limitations. Indeed, courts have held that a debt collector violates that provision by knowingly attempting to collect a time-barred debt.

*Wright v. Asset Acceptance Corp.*, 2000 WL 33216031, at *3 (S.D. Ohio Jan 3., 2000).

In this matter, there is a legal dispute as to the applicable statute of limitations. The Settlement Agreement reached by the parties avoids the risks of litigating those remaining issues.

Beyond the legal obstacles Plaintiffs may encounter, each defense presents financial risks to the Class. Defendants are represented by experienced and competent counsel and have already mounted a zealous and thorough defense to Plaintiffs' claims. Therefore, due to the existence of uncertainties inherent in Plaintiffs' claims and resources, Plaintiffs' likelihood of success on the merits is uncertain. This factor weighs in favor of approval of the proposed Settlement.

### 2. *The amount and form of relief offered in settlement*

"The determination of what constitutes a 'reasonable' settlement is not susceptible of a mathematical equation yielding a particularized sum. Rather... 'in any case, there is a range of reasonableness with respect to a settlement.'" *In re Michael Milken Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The court need not decide the amount of a potential recovery at trial, since the approval of the settlement should not involve a trial on the merits. *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio

1993) (citing *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)).

Here, the $74,500 cash settlement provides valuable relief to all Class Members. $37,500 will be distributed to the class members; $3,000 will be paid to each of the named plaintiffs, Michelle Caldwell and Angela Wess; and $31,000 will be paid to the Equal Justice Foundation for attorneys' fees, costs and expenses. No further action will be required by the Class Members or the named Plaintiffs to secure this relief. Further, Plaintiffs' counsel earned fees of over $90,000, and agreed to settle for a payment of only $31,000. Thus, balanced against the possibility that the Class Members will receive nothing by going forward on the merits of their claims, this factor weighs in favor of approving the proposed Settlement.

## B.    Complexity, Expense, and Likely Duration of the Litigation

In general, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1013 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). Here, the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement.

The Fair Debt Collection Practices Act is a set of complex laws with many components. In order to establish liability, the plaintiff must first prove the defendant falls within the definition of a debt collector, including the definition of "regularly collects" for attorney defendants. Further, the plaintiff must also prove that the transaction is covered by the Act. In this case, Plaintiffs must also establish the proper statute of

limitations to be applied and prove that the action was taken by a debt collector after the expiration of the statute of limitations.

Similarly, the Ohio Consumer Sales Practices Act requires the Plaintiff to prove that the transaction falls within the definition of a "consumer transaction," that the defendant was a "supplier," and that the plaintiff was a "consumer." Plaintiff also must be successful in avoiding the exclusions from the Act to ensure coverage.

Due to the legal and factual complexities, this case would be expensive to fully litigate and might take years to resolve. Although a partial motion for summary judgment has been filed on the CSPA claim, no such motion has yet been filed on the FDCPA claim; Plaintiffs would be required to litigate and win such a claim to move forward. Further, trial preparation will result in the expenditure of many additional hours of effort and substantial additional expenses. The trial could last several days and involve the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the expenditure of enormous amounts of judicial and financial resources. In complex class action litigation such as this, those expenses will burden any recovery obtained for the Class, if Plaintiffs were to succeed.

Furthermore, if the Class were to recover a judgment larger than the Settlement offer, the additional delay due to post trial motions and the appellate process could deny Class Members a recovery for years. *See e.g., Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213 (S.D.N.Y. 1992). Given the time value of money, a future recovery, even one greater than the proposed Settlement, may be less valuable to the Class than receiving the benefits of the proposed Settlement now. To delay this matter further would not substantially benefit the Class. *See Brotherton v. Cleveland*, 141 F.

Supp. 2d 894, 903 (S.D. Ohio 2001).

Thus, this factor also weighs in favor of approving the proposed Settlement. It secures a substantial benefit for the Class in a complex case, undiminished by further expenses, and without delay, costs, and uncertainty of protracted litigation.

## C.    Stage of the Proceedings and the Amount of Discovery Completed

To ensure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement, the stage of the proceedings and the discovery taken must be considered. *See In re Telectronics Pacing Sys.*,137 F. Supp. 2d at 1015; *see also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000). The proposed Settlement was reached almost two years after litigation commenced. During that time, both parties were involved with extensive discovery and motion practice.

Plaintiffs' discovery included obtaining and reviewing voluminous documents related to the allegations contained in the Complaint; completing interrogatory and document requests; deposing Defendants' key witnesses; and spending hours obtaining court documents showing class membership and statute of limitations violations. Given this extensive discovery, this Court will "defer to the judgment of experienced trial counsel who have evaluated the strength of his case." *Kogan*, 193 F.R.D. at 501 (quoting *Bronson*, 604 F.Supp. at 73).

In addition to the thorough discovery, Defendants filed a Motion for Judgment on the Pleadings and a Motion for Partial Summary Judgment. Based upon the briefing and the discovery completed, both parties had a "clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 618 F.Supp.

735, 745 (D.C.N.Y. 1985).

Hence, the record before this Court clearly demonstrates that both sides in this conflict have been afforded an adequate opportunity to conduct sufficient discovery to be fully apprised about the legal and factual issues presented as well as the strengths and weaknesses of their cases. Both sides made a well-informed decision to enter into the proposed Settlement agreement. This weighs in favor of approving the proposed Settlement.

**D.    Judgment of Experienced Trial Counsel**

It is well settled that, in approving a class action settlement, the court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams*, 720 F.2d at 922–23. "Significantly, however, the deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered." *Id.* "The court should insure that the interests of counsel and the named plaintiffs are not unjustifiably advanced at the expense of unnamed class members." *Id.* Furthermore, the court's approval is contingent upon "proof that the settlement was the product of arm's-length bargaining entered into after there had been sufficient discovery to enable counsel to act intelligently." *Stull v. Baker*, 410 F. Supp. 1326, 1332 (D.C.N.Y. 1976).

In the instant case, both Plaintiffs' and Defendants' counsel are experienced practitioners. Plaintiffs' counsel, Gary Smith and Kate Schulte, have both practiced law for approximately thirty years and are experienced class action and complex litigation attorneys. Counsel for both sides urge final approval of the proposed Settlement based upon their experience, their knowledge of the strengths and weaknesses of the case,

their analysis of the discovery reviewed to date, the likely recovery at trial and on appeal, and other factors considered in evaluating the proposed class action settlement. In addition, the Court determines that the proposed Settlement has been negotiated vigorously and at arm's length by Plaintiffs and their counsel on behalf of the Plaintiffs and the Plaintiff Class. This Court further finds that, at all times, Plaintiffs acted independently and that their interests coincide with the interests of the Plaintiffs and the Plaintiff Class.

## E.    Nature of the Negotiations

The Court gives significant weight to the belief of experienced counsel that the settlement is in the best interest of the class. *In re Telectronics Pacing Sys.*,137 F. Supp.2d at 1016 (citing *In re Orthopedic Bone Screw Prod. Liab. Litig.* 176 F.R.D. 158, 184 (E.D. Pa. 1997)). Initially, however, the court should determine whether the settlement was non-collusive and ask whether it was reached through arms-length negotiations. *Id.*

In the case at bar, the proposed Settlement was negotiated in an adversarial manner after several rounds of motion practice, intensive depositions and discovery practice, and several rounds of negotiations, as supported by Plaintiffs' time sheet records. Both parties to the negotiations vigorously attempted to secure the most desirable conclusion for their respective clients. Settlement proposals were exchanged back and forth between the parties on numerous occasions in an attempt to resolve the key issues relative to the proposed Settlement. This process resulted in a fair, reasonable, and adequate Settlement. *See TBG, Inc. v. Bendis*, 811 F. Supp. 596, 605 (D. Kan. 1992) (finding a settlement fair in the absence of collusion where the

settlement was the result of arm's length negotiations that were hard-fought).

As a result, the Court concludes that the proposed Settlement was reached in good faith. This factor weighs in favor of approving the proposed Settlement.

## F.    Objections Raised by the Class Members

In considering a class action settlement, the Court should look to the reaction of the class members. *Brotherton*, 141 F. Supp.2d at 906. Of course, '[t]he fact that some class members object to the settlement does not by itself prevent the court from approving the agreement." *Id.* Rather, "[t]he small number of objectors is a good indication of the fairness of the settlement." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) (citing *Laskey v. Int'l Union*, 638 F.2d 954 (6th Cir. 1981)).

Here, more than 220 Class Members were provided notice of the proposed Settlement via regular first class mail service. Additionally, the notice was posted in each of the legal aid offices serving all 88 counties in Ohio, as well as on the website of the Equal Justice Foundation. No Class Members objected to the Settlement. As such, the Class reaction indicates the Class supports the Settlement. *See Whitford*, 147 F.R.D. at 141. In sum, the proposed Settlement enjoys the unanimous support of the Class Members who received notice. This factor weighs in favor of approving the proposed Settlement.

## G.    Public Interest

The Court notes that the public interest favors approval of the proposed Settlement. *See Franks*, 649 F.2d at 1224. This case is of general public interest because most large consumer purchases are made through credit purchases and

installment payments. Further, in the instant case, the proposed Settlement ends potentially long and protracted litigation and frees the Court's valuable judicial resources. *In re Telectronics Pacing Sys.*,137 F. Supp. 2d at 1025; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990). The Court concludes that this factor weighs in favor of approving the proposed Settlement because the public interest is served by resolution of this action.

## II. CLASS CERTIFICATION

The benefits of a settlement can be realized only through the final certification of a settlement class. However, the Court maintains broad discretion in deciding whether to certify a class. *See Amchem Prods., Inc. v. Windsor Prods.*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). A class action is the superior method in a Fair Debt Collection Practices Act case. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, Case No. 1:06CV1397, 2010 U.S. Dist. LEXIS 132034, at *16 (U.S. Dist. Ct. ND OH Dec. 14, 2010) (citing *Weber v. Goodman*, 9 F. Supp. 2d 163 (E.D. N.Y. 1998)). As such, the proposed class satisfies each requirement of Rule 23(a), (b)(1), and (b)(2).

## A.     Rule 23(a) Requirements

The four requirements of Rule 23(a), numerosity, commonality, typicality, and adequacy, are well recognized and defined by the courts. *See Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976). As demonstrated below, these four requirements are satisfied in this action.

### 1.     Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members

is impracticable." This requirement is not amenable to a strict numerical test. *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The court must examine this factor in light of the specific facts of the case. *Id.* Nonetheless, common sense dictates that at some point numbers alone will satisfy the numerosity requirement. *Id.*

In the instant case, 220 Class Members were provided notice of the proposed Settlement via regular first class mail service. Therefore, there is no question that the class is so numerous that joinder of all members would be impracticable. Thus, numerosity is present.

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." This requirement is interdependent with the impracticability of the joinder requirement. *In re Am. Med. Sys.*, 75 F.3d at 1080. Together, these tests form the conceptual basis for class actions. *Id.*

> The class-action was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. Class relief is particularly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. In such cases, the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23.

*Id.* at 1076 (quoting *General Telephone v. Falcon*, 457 U.S. 147, 155 (1982) (internal citations omitted)). The commonality test is qualitative. *Id.* (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §3.10 at 3-50). Hence, a single issue common to all members of the class satisfies the requirement. *Id.*

Not every common question satisfies the commonality requirement; at some point of generality and abstraction almost any set of claims exhibits commonality. *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc). Rather, to satisfy Rule 23(a)(2), the case must present a common issue the resolution of which will advance the litigation. *Id.*

Here, each Class Member's claim raises questions of law or fact that are common to the class. The Class Members share common questions of law and fact that are substantial and material to Defendants' liability on class claims, including the precise nature and extent of Defendants' collection practices and whether those practices violate the FDCPA and/or the CSPA. Thus, Rule 23(a)(2) is satisfied because there are questions of law or fact common to the Class.

### 3. Typicality

The claims or defenses of the representative parties are typical of the claims and defenses of the class. Under Rule 23(a)(3), "the claims or defenses of the representative parties [shall be] typical of the claims or defenses of the class."

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to the class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*In re Am. Med. Sys.*, 75 F.3d at 1082 (quoting Newberg, supra, § 3-13 at 3–76 (footnote omitted)). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.

Differing degrees of injury among class members does not necessarily defeat typicality if the basic injury each class member asserts is the same. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 885 (6th Cir. 1997). Likewise, typicality may be found even if different defenses may apply to some class members. *Id.* at 884.

Here, the representative party's claims are typical in that they have been subjected to the same debt collection practices as the Class Members, and allege the same legal and remedial theories of relief based upon the FDCPA and CSPA for themselves as they assert for absent Class Members. *See Passa v. City of Columbus*, 266 F.R.D. 197 (S.D. Ohio 2010) (finding typicality in a Fair Debt Collection Practices Act claim).

Therefore, since the representative parties are stating the same claim, concerning the same conduct and seeking the same relief as the Class Members, Rule 23(a)(3) is satisfied.

   4.    *Adequacy of Representation.*

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." Due process demands this inasmuch as a final judgment will bind all class members. *In re Am. Med. Sys.*, 75 F.3d at 1083.

To establish adequacy of representation, plaintiffs must satisfy two elements. First, the representative must have interests common with the unnamed members of the class. *Id.* Second, it must be shown that the representatives—through qualified counsel—will vigorously prosecute the interests of the class. *Id.*

Here, the first element is satisfied. Plaintiffs have no interests antagonistic to those of the absent Class Members and sought the same relief for themselves as they

do for the class. In addition, Plaintiffs and each Class Member have been damaged by the same alleged misconduct and, as a result, each has precisely the same interest in achieving the maximum recovery.

The second element is satisfied. Plaintiffs have shown that they are adequate representatives for the class. Plaintiffs' counsel are experienced in representing plaintiffs in consumer protection and complex class action litigation. Moreover, the record indicates Plaintiffs' counsel vigorously and effectively pursued the interests of the Class.

Therefore, Rule 23(a)(4) is satisfied.

## B.   Rule 23(b) Analysis

To be properly certified, a class action must satisfy each of the four requirements of Rule 23(a) and must also pass at least one of the tests set forth in Rule 23(b). Rule 23(b) provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
>
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b).

Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re Ikon Office Solutions Securities Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000). Here, Plaintiffs' FDCPA and CSPA claims will, as a practical matter, adjudicate the interests of all Class Members. If this case was adjudicated individually and relief was granted in some actions but denied in others, the conflicting relief would muddle the law and make compliance impossible for Defendants. Thus, certification under Rules 23(b)(1)(A) and (B) is appropriate.

Certification is also appropriate pursuant to Rule 23(b)(2) because all Plaintiffs' FDCPA and CSPA claims are based on conduct by Defendants that is "generally applicable to the class." Rule 23(b)(2). Plaintiffs allege that Defendants pursued collection and collection litigation under retail installment sale contracts against a car

dealer's former customers after expiration of the four-year statute of limitations applicable to such contracts. This conduct affected all of the Class Members and, thus, certification under Rule 23(b)(2) is appropriate because it cannot reasonably be disputed that the conduct was "generally applicable to the class." Rule 23(B)(2).

For the above reasons, the Court grants the parties' motion to approve the settlement class. The Court hereby approves the maintenance of the action as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), and (b)(2), with the Class being defined as follows:

(a) all persons who at any time on or after April 30, 2006 and before January 6, 2010 were or will be the subject of any communication from or civil action by Storey in connection with collection of or an attempt to collect a consumer debt after four years from the date of default.

(b) all persons who at any time on or after May 30, 2007 and before January 6, 2010 were the subject of any civil action filed by Storey in connection with collection or an attempt to collect a consumer debt after four years from the date of default.

## III. ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENTS

On March 8, 2010, the parties filed an Agreed Motion for Fees and Costs with supporting documentation. The Court considered the Motion and heard testimony on this matter at the fairness hearing. On the basis of the Motion and hearing, the Court finds as follows.

Plaintiffs' counsel achieved a proposed Settlement that provides for the immediate recovery of $74,500 in cash. That amount includes $37,500 to be distributed to the Class Members, $3,000 each to the two named class representatives, and $31,000 in fees and costs to Plaintiffs' counsel. There were no objections filed to

the proposed settlement, to the request for attorneys' fees and costs, nor to the request for payments to the Class Representatives.

As noted above, the Class will recover damages without further delay or risk. The Settlement is the result of arm's-length negotiations by experienced counsel. The Settlement was presented to this Court for final approval only after Plaintiffs' Counsel determined that the settlement was in the Class's best interests.

This action was undertaken and prosecuted on a wholly contingent basis. A Court may award a fee based upon the hours expended, hourly rates of the attorneys involved, and a multiplier to take into account the case's contingency. *In re Telectronics Pacing Sys., Inc.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999), *rev'd on other grounds*, 221 F.3d 870 (6th Cir. 2000). Plaintiffs' counsel have requested only one-third of the total fees and costs expended on this case. Of over $90,000 accrued in this case (not including the costs yet to be incurred for administration of the class), class counsel has agreed to settle for only $31,000, which they reasonably and necessarily incurred. The two Class Representatives will receive a modest incentive payment of $3,000 each.

The Court must ensure that class counsel are fairly compensated for the amount of work done and the results achieved. *Rawlings v. Prudential-Bache Props*, Inc., 9 F.3d 513, 516 (6th Cir. 1993). The core inquiry is whether an award is reasonable under the circumstances. *Id.* at 517. Absent adequate compensation, counsel will not be willing to undertake the risk of contingent fee class action litigation. Indeed, as an incentive to provide counseling to the poor, it is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard

Posner, Economic Analysis of Law, 21.9, at 534–35 (3d ed. 1986). Class Counsel seek
only their normal hourly rates in this case.

Class Counsel accepted this case on a contingent basis and, therefore, have
received no compensation during the course of this litigation and have incurred
significant expenses in litigating for the benefit of the Class. Any fee award or expense
reimbursement to Class Counsel has always been at risk and completely contingent on
the results achieved. The risk was monumental in this case where Defendants
vigorously contested the litigation.

In this instance, the Court's function is to determine what the lawyer would
receive in the market and to compensate counsel at the fair market value. *Revco
Securities Litigation, Arsam Co. v. Saloman Brothers, Inc.*, 1992 U.S. Dist. LEXIS 7852
*10, 12 (N.D. Ohio, May 6, 1992) (citing, *inter alia*, *Louisville Black Police Officers
Organization v. City of Louisville*, 700 F. 2d 268, 277 (6th Cir. 1983)). The hourly rates
requested here are reasonable. The rates have been supported by an appropriately
filed affidavit from a well-respected attorney in the local community, Frederick M. Gittes.
The attorney declaration establishes the reasonableness of the rates and that they are
consistent with the training, background, experience and skill of the attorneys.
*Louisville Black Police Officers Organization*, 700 F.2d at 277 (citing *Northcross v.
Board of Education of Memphis City Schools*, 611 F.2d 624, 638 (6th Cir. 1979), *cert.
denied*, 447 U.S. 911 (1980)).

In *Ramey v. Cincinnati Enquirer, Inc.*, the Sixth Circuit identified six factors for
consideration in determining the reasonableness of a fee award:

    1.    The value of the benefit rendered to the class;

2.    Society's stake in rewarding attorneys who produce such benefits
      in order      to maintain an incentive to others;

3.    Whether the services were undertaken on a contingent fee basis;

4.    The value of the services on an hourly basis;

5.    The complexity of the litigation; and,

6.    The professional skill and standing of counsel on both sides.

508 F.2d 1188, 1196 (6th Cir. 1974); see also Smillie v. Park Chem. Co., 710 F.2d 271,
275 (6th Cir. 1983).

A review of the Ramey factors also supports the Plaintiffs' fee request as being
fair and reasonable. Plaintiffs secured a substantial benefit for the class and there is a
public interest in ensuring that attorneys willing to represent low-income persons in fair
debt and consumer protection cases are adequately paid so that they and others like
them will continue to take on such cases. Adequate compensatory fee awards in
successful class actions promote private enforcement of compliance within important
areas of federal law. See Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299,
310 (1985). Protecting low-income persons from unfair collection of debts is of genuine
public interest and, thus, supports a full compensatory fee award. Plaintiffs have not
requested a multiplier.

A Fair Debt Collection Practices Act and Consumer Sales Practices Act case, in
the setting of a large class action, presents a fairly complex factual and legal case.
Plaintiffs counsel have consumer class action experience. See Declarations of Counsel
Smith and Schulte. These lawyers vigorously represented their clients against worthy
opponents. The Court finds appropriate the fee award requested by Plaintiffs' counsel.

The Court finds appropriate the requested payment to the two Class Representatives, Angela Wess and Michelle Caldwell, for their efforts in this case, in a very modest amount of $3,000 each. These two Plaintiffs located willing counsel, initiated lawsuits, and invested their own time, effort, and funds for the benefit of the Class. Plaintiffs were deposed at length. Their initiative, time, and effort were essential to the successful prosecution of the case and resulted in a significant recovery for the Class.

Accordingly, this Court awards Plaintiffs' Counsel $31,000 in attorneys fees. Named Class Representatives Ms. Wess and Ms. Caldwell are also granted a payment of $3,000 each.

## IV. DISPOSITION

For the foregoing reasons, the Court **GRANTS** the parties' Motion for Final Approval of Proposed Settlement and Final Certification of the Class and Agreed Motion for Award of Fees and Costs and Incentive Payments to Class Representatives.

Based on the above, and the Settlement Agreement, the Court **ORDERS, ADJUDGES, AND DECREES** as follows:

1. The Court hereby dismisses the Complaint against the Defendant with prejudice on the merits, and without taxation of costs in favor of or against any party.

2. As of the Effective Date (as defined in the Agreement), the Plaintiffs and each member of the Class shall have released the Defendant, and the Defendant shall be deemed to have released the Plaintiffs and the Settlement Class in accordance with the terms of the Agreement.

3. The Court hereby decrees that neither the Agreement nor the Settlement

nor this Order is an admission or concession by any Defendant of any liability or wrongdoing. This Order is not a finding of the validity or invalidity of any of the claims assessed or defenses raised in this Action.

4. Except as otherwise provided herein or in the Agreement, each party shall bear its own fees, expenses, and costs. Class counsel shall administer the class fund.

5. Without affecting the finality of this Order, the Court retains jurisdiction for purposes of implementing the Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Agreement and Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising hereunder.

The Clerk shall enter a final judgment in this case, approving the $37,500 Class Settlement, certifying the Settlement Class as provided above, awarding $31,000 in attorneys' fees and expenses to Plaintiffs' Counsel, and granting Named Class Representatives Wess and Caldwell a payment of $3,000 each.

The Clerk shall dismiss the Complaint in this Action in its entirety with prejudice on the merits and without taxation of costs in favor of or against any party.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**